KW LAW, LLP
6122 N. 7th St., Suite D
Phoenix, AZ 85014
Telephone: (602) 609-7367

Mark Williams (#026403)
mark@kwlaw.co
Andrea S. Tazioli (#026621)
andrea@kwlaw.co

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trinity Faire, LLC, an Arizona limited liability company, and Steven and Anne Bever, husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> America's Collectibles Network, Inc., dba Jewelry Television, a Tennessee corporation, <br><br> Defendant | Case No. <br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs Trinity Faire, LLC ("Trinity Faire"), Steven Bever ("Mr. Bever") and Anne Bever ("Mrs. Bever") (collectively, "Plaintiffs"), by and undersigned counsel, for their Complaint against Defendant America's Collectibles Network, Inc., doing business as Jewelry Television ("Defendant"), allege, as follows:

**PRELIMINARY STATEMENT**

1. This is an action for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and for substantial and related claims of unfair competition under the statutory and common laws of the State of Arizona, all arising from the Defendant's unauthorized use of the mark TF in connection

1

Case 3:22-cv-00417-CLC-DCP   Document 1   Filed 06/29/22   Page 1 of 15   PageID #: 1
4887-8289-2583, v. 2

with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Plaintiffs' jewelry.

2. Plaintiffs seek injunctive and monetary relief.

**JURISDICTION**

3. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 1332(a), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

**VENUE**

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Plaintiffs reside in this district.

5. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, or a substantial part of property that is the subject of the action is situated in this district.

**PARTIES**

6. Plaintiff Steven Bever and Plaintiff Anne Bever are husband and wife and reside in Phoenix, Arizona.

7. Plaintiff Trinity Faire, LLC is a limited liability company formed under the laws of Arizona that does business in Phoenix, Arizona. Trinity Faire has two members – Mr. and Mrs. Bever.

8. Upon information and belief, Defendant America's Collectibles Network, Inc., doing business as Jewelry Television, Inc., is a corporation that is incorporated in Tennessee and has a place of business at 9600 Parkside Drive, Knoxville, TN 37922.

9. At all times relevant, Defendant America's Collectible Network, Inc., doing business as Jewelry Television, Inc., engaged in business with Plaintiffs in this district.

**FACTS**

10. Plaintiff Steven Bever is a jewelry designer and manufacturer specializing in the design and manufacture of turquoise jewelry.

11. Plaintiff Steven Bever and Plaintiff Anne Bever own and operate Trinity Faire, which sells the jewelry designed and manufactured by Mr. Bever.

12. Plaintiffs have used the Trinity Faire Mark ("TF Mark") in commerce throughout the United States continuously since May 30, 2017 in connection with the manufacture, sale, marketing, and promotion of turquoise jewelry. Attached hereto as Exhibit A are photographs of representative samples of jewelry showing Plaintiffs' use of the TF Mark in connection with its jewelry.

13. As a result of its widespread, continuous, and exclusive use of the TF Mark to identify its turquoise jewelry and Plaintiffs as their source, Plaintiffs owns common law rights to its TF Mark.

14. Plaintiffs promoted and sold their turquoise jewelry under the TF Mark via Defendant's television and online shopping networks.

15. Upon information and belief, Defendant is currently engaged in the hosting, promotion, and sale of jewelry through its television or online platforms.

16. In 2012, Plaintiffs, in collaboration with Defendant, launched a turquoise based jewelry collection under the brand name Tehya Oyama ("Tehya") on both the Defendant's cable television channel and Defendant's website, <www.jtv.com>.

17. Plaintiffs exclusively designed and manufactured all Tehya products.

18. Additionally, Plaintiff Mrs. Bever honored Defendant's request that she personally appear on Defendant's cable television channel for all Tehya broadcasts and represent the brand in regularly scheduled appearances as an unpaid, "expert guest host."

19. Plaintiffs were responsible for all costs associated with designing and manufacturing the Tehya products, as well as all expenses associated with representing the brand and product, including but not limited to all required travel expenses.

20. Defendant issued purchase orders for products, and Plaintiffs issued invoices for all products delivered.

21. However, anything related to order details such as product selection, order quantities, purchasing, delivery dates, show dates, product rejection, and terms of payment, remained strictly confidential at the discretion and control of Defendant.

22. The collaboration between Plaintiff and Defendant operated more or less in this manner from 2012 until late 2018.

23. In September 2018, November 2018, and January 2019, Plaintiffs contacted Defendant regarding numerous concerns they had with Defendant's copying of Plaintiffs' products.

24. Specifically, Plaintiffs presented Defendant's representatives with multiple images located on Defendant's website <www.jtv.com> of Plaintiff's designs, which had been copied and listed for sale under other brands owned by the Defendant (i.e. Sleeping Beauty Turquoise).

25. On each occasion, Defendant representatives apologized to Plaintiffs and explained that this was a mistake—namely an intradepartmental miscommunication—and it would not happen again.

26. In February 2019, Plaintiffs received an e-mail from Haley Maples, Vice President of Merchandising for Defendant, that included a contract and note explaining that the contract was intended "to solidify our ongoing partnerships while continuing to have both parties' interests in mind." *See* Email from Haley Maples, dated Feb. 15, 2019, attached at Exhibit B.

27. Defendant informed Plaintiffs that the contract would need to be signed before Mrs. Bever would be allowed to continue on air. *Id.*

28. Plaintiffs quickly requested a meeting with key Defendant representatives to understand the urgency surrounding the contract, as Defendant and Trinity Faire had operated for the prior seven (7) years with no contract.

29. Defendant agreed to meet with Plaintiffs to discuss the terms of the contract, but only after the contract was signed.

4887-8289-2583, v. 2

30. On or about May 2019, Defendant and Plaintiffs mutually agreed to amend the contract to add Trinity Faire as the sole supplier of "Products" produced in connection with the contract.

31. The parties also agreed to amend the contract so that Mrs. Bever's name, image, likeness, etc. could only be used to promote the "Products" identified in the contract.

32. On or about July 1, 2019, Plaintiffs reluctantly signed the contract relying entirely on Defendant's claim that they were extending the contract in "good faith." *See* Contract between Trinity Faire and Defendant, dated Jul. 1, 2019, attached at Exhibit C.

33. Nine (9) days after the contract was signed, Defendant uncharacteristically rejected six (6) product designs amounting to almost $60,000.00 of Plaintiff's products.

34. This single rejection was approximately ten (10) times greater than the total of all rejections in the previous seven (7) year business relationship between Plaintiffs and Defendant.

35. It is important to note that all rejections were purportedly based on test results from Defendant's in-house testing facility which stated that materials did not meet industry standards. Yet, Defendant refused to provide official lab reports showing the results of the alleged in-house testing.

36. Confused by these rejections, Plaintiffs sent a sampling of the rejected products to the Gemological Institute of America (the "GIA") for testing.

37. Notably, the GIA test results did not match the reported results from the Defendant's in-house testing facility.

38. Yet, Defendant refused to recognize the official GIA test results. *See* GIA Identification Reports, dated July 15-16, 2019, attached at Exhibit D.

39. In August 2019, and in exchange for signing the contract, Plaintiffs traveled to the Defendant's headquarters in Tennessee for a scheduled meeting with the following three key company representatives – Kris Kulesza, Haley Maples, and Angela Caldwell.

4887-8289-2583, v. 2

40. Upon their arrival at the scheduled meeting time and location, Plaintiffs were informed that none of the requested key company representatives would be attending.

41. Instead of the agreed upon attendees, Plaintiffs met with their buyer, Brittany Waring, to discuss the evidence Plaintiffs collected showing examples of Defendant's copying of Mr. Bever's designs.

42. In February 2020, and in violation of the contract, Defendant informed Plaintiffs they would be taking control of the Tehya Product manufacturing and moving it to a factory in Thailand called BBJ, which, on information, is owned by the founders of Defendant.

43. Plaintiffs reminded Defendant of the contract provisions which expressly stated that Trinity Faire is the sole producer and manufacturer of all Tehya Products.

44. Defendant suggested an amendment to the contract, but Plaintiffs refused to sign such an amendment. *See* Amendment, dated March 2020, attached at Exhibit E.

45. In August 2020, the Tehya brand had three of the most successful on-air shows in the brand's history.

46. Several weeks later, on or about October 2, 2020, Defendant issued purchase orders with item quantities reflecting the success of the previous shows. *See* Purchase Orders, dated Oct. 2, 2022, attached at Exhibit F.

47. Two weeks later, and despite the success of the August 2020 shows, Defendant inexplicably informed Plaintiffs that the October 2020 show would be cancelled "due to lack of sales and poor product performance in the previous show."

48. Defendant also canceled the remaining 2020 fourth quarter Tehya shows due to a purported history of turquoise jewelry sales underperforming in the months of November and December.

49. In the prior seven (7) years working with Defendant, Plaintiff had not been aware of any problems with fourth quarter performance or sales – because there were none.

4887-8289-2583, v. 2

50. On or about February 16, 2021, Defendant sent a final email to Plaintiff terminating its relationship and Vendor Services Agreement with Trinity Faire. *See* Email from Haley Maples, dated Feb. 16, 2021, attached at Exhibit G.

51. On or about March 30, 2021, Plaintiffs, through counsel, sent a timely Notice of Non-Renewal to Defendant. *See* Notice of Non-Renewal, dated Mar. 30, 2021, attached at Exhibit H.

52. Subsequent to Defendant's termination of the relationship and Vendor Services Agreement in 2021, Plaintiffs began to review years of sales data in an effort to understand why Defendant would take such action.

53. As a result of this review, on or about March and April 2021, Plaintiffs uncovered Defendant's scheme to siphon revenue based upon the Defendant's unauthorized copying of Plaintiffs' proprietary products.

54. Specifically, on or about March and April 2021, Plaintiffs reviewed the sales data from February 2016 to October 2017 for Item TRD230B, an 8-strand turquoise bracelet (the "Copied Bracelet"), which showed that Plaintiffs delivered 2,152 pieces of the bracelet to Defendant. Notably, the sales data reflected a gross quantity sold of 3,460 pieces.

55. Defendant's own sales data shows that Defendant sold 1,308 **more** bracelets than the actual number of pieces Plaintiffs delivered to Defendant.

56. Also, on or about March and April 2021, Plaintiffs reviewed the sales data from February 2016 to February 2018 for item TRQ230R, a turquoise ring (the "Copied Ring"), which showed that Plaintiffs delivered 850 pieces of the ring to Defendant. Remarkably, the sales data reflected a gross quantity sold of 1,248 pieces.

57. Defendant's own sales data shows that Defendant sold 398 **more** rings than the actual number of pieces Plaintiffs delivered to Defendant.

58. Without Plaintiffs' authorization, and upon information and belief, Defendant produced more than 1,300 unauthorized copies of the Copied Bracelet.

4887-8289-2583, v. 2

59. Without Plaintiffs' authorization, and upon information and belief, Defendant also produced nearly 400 unauthorized copies of the Copied Ring.

60. On or about 2021, Plaintiffs also reviewed the sales data from May 2017 to January 2019 for item TRQ483, a turquoise necklace (the "Copied Necklace"), which showed that Plaintiffs delivered 400 pieces of the necklace to Defendant. Defendant's sales data reflected a gross quantity sold of 525 pieces.

61. Again, Defendant's own sales data shows that Defendant sold 125 more necklaces than the actual number of pieces Plaintiffs delivered to Defendant.

62. Defendant also promoted the Trinity Faire brand and its TF mark on Defendant's website. Incredibly, that promotion continues today. *See* Images Displaying TF Mark, last accessed from www.jtv.com on June 23, 2022, attached at Exhibit I.

63. Without Plaintiffs' authorization, and upon information and belief, Defendant adopted and began using a mark identical to Plaintiff's TF Mark (hereinafter, the "Infringing Mark") in U.S. commerce in connection with Defendant's sale of at least 125 unauthorized copies of the Copied Necklace.

64. The Infringing Mark adopted and used by Defendant is identical to Plaintiff's TF Mark.

65. Upon information and belief, Defendant has manufactured, distributed, advertised, promoted, offered for sale, and sold turquoise jewelry using the Infringing Mark throughout the US. Attached hereto as Exhibit J is a true and correct copy of a representative ring showing Defendant's use of the Infringing Mark alongside Plaintiffs' authentic ring.

66. On or about December 14, 2021, Plaintiffs' counsel sent a demand letter to Defendant objecting to Defendant's use of the Infringing Mark. See Demand Letter, dated Dec. 14, 2021, attached at Exhibit K.

67. Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiffs' TF Mark, cause confusion and

deception in the marketplace, and divert potential sales of Plaintiff's turquoise jewelry to the Defendant.

68. Defendant's acts have caused, and unless restrained, will continue to cause damage and irreparable harm to Plaintiffs and to its valuable reputation and goodwill with the consuming public, for which Plaintiffs have no adequate remedy at law.

## COUNT ONE

## (Federal Unfair Competition)

69. Plaintiffs repeat and reallege Paragraphs 1 through 68 hereof, as though fully set forth herein.

70. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiffs.

71. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

72. Upon information and belief, Defendant's conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

73. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

75. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO

### (Common Law Trademark Infringement)

76. Plaintiffs repeats and reallege Paragraphs 1 through 75 hereof, as though fully set forth herein.

77. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiffs. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

78. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiffs' prior rights to the TF Mark and with the willful intent to cause confusion and trade on Plaintiffs' goodwill.

79. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

80. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE

### (Unjust Enrichment)

81. Plaintiffs repeat and reallege Paragraphs 1 through 80 hereof, as if fully set forth herein.

4887-8289-2583, v. 2

82. Defendant produces unauthorized copies of Plaintiffs' products.

83. Defendant utilized Plaintiff Mrs. Bever to promote and sell these unauthorized copies. Mrs. Bever bore the expense of this promotion.

84. As such, Defendant received the benefit of Plaintiffs' turquoise jewelry expertise, design knowledge, and on-air personality at the expense of Plaintiffs.

85. Accordingly, Defendant was unjustly enriched, to the detriment of Plaintiffs.

## Prayer for Relief

WHEREFORE, Plaintiffs request judgment against Defendant, as follows:

1. That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and A.R.S. § 44-1448.01.

2. Granting an injunction preliminarily and permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. providing, selling, marketing, advertising, promoting, or authorizing any third party to distribute or provide, sell, market, advertise, or promote any goods or services bearing the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' TF Mark;

    b. engaging in any activity that infringes Plaintiffs' rights in its TF Mark;

    c. engaging in any activity constituting unfair competition with Plaintiffs;

    d. engaging in any activity that is likely to dilute the distinctiveness of Plaintiffs' TF Mark;

4887-8289-2583, v. 2

e. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendant's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs; or (ii) Plaintiffs' goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

f. using or authorizing any third party to use in connection with any businesses, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

g. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Infringing Mark or any other mark that infringes or is likely to be confused with Plaintiffs' TF Mark, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

h. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

3. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services provided, sold, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, franchised by, associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' goods and services.

4. Directing Defendant to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale, publishing, posting and/or use of any and all packaging, labels, catalogs, advertisements, signs, displays, websites, social

4887-8289-2583, v. 2

media profiles, and other materials that feature or bear any designation or mark incorporating the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' TF Mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, advertisements, signs, displays, websites, social media accounts, and other materials featuring or bearing the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiffs' TF Mark, and to immediately remove them from public access and view.

5. Directing that Defendant recall and deliver up for destruction all advertisements, promotions, signs, displays, social media profiles, websites, and related materials incorporating or bearing the Infringing Mark or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiffs' TF Mark.

6. Directing Defendant to formally abandon with prejudice any and all applications to register the Infringing Mark or any mark consisting of, incorporating, or containing Plaintiffs' TF Mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

7. Directing Defendant to cancel with prejudice any and all registrations for the Infringing Mark or any mark consisting of, incorporating, or containing Plaintiffs' TF Mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

8. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended

period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

9. Awarding Plaintiffs an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

10. Directing that Defendant account for and pay over to Plaintiffs all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)) and A.R.S. § 44-1451, enhanced as appropriate to compensate Plaintiffs for the damages caused thereby.

11. Awarding Plaintiffs punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

12. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiffs their costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

13. Awarding Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums.

14. Awarding such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 29th day of June 2022.

KW Law, LLP
6122 N. 7th St., Suite D
Phoenix, AZ 85014

By: */s/ Mark Williams*
   Mark Williams (#026403)
   mark@kwlaw.co
   Andrea S. Tazioli (#026621)
   andrea@kwlaw.co

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on the 29th day of June 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, using the CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record.

/s/ Blake Scheffey
*Employee of KW Law, LLP*