# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| Trinity Faire, LLC, an Arizona limited liability company, and Steven and Anne Bever, husband and wife,<br><br>        Plaintiffs,<br><br>   vs.<br><br>America's Collectibles Network, Inc., dba Jewelry Television, a Tennessee corporation,<br><br>    Defendant. | Case No. 3:22-cv-00417-CLC-DCP |
| America's Collectibles Network, Inc., dba Jewelry Television, a Tennessee corporation,<br><br>    Counterclaim-Plaintiff,<br><br>   vs.<br><br>Trinity Faire, LLC an Arizona limited liability company, and Anne Bever, individually,<br><br>    Counterclaim-Defendants | |

---

## DEFENDANT'S AMENDED ANSWER TO PLAINTIFFS' COMPLAINT

---

Defendant America's Collectibles Network, Inc. dba Jewelry Television ("JTV"), by and through the undersigned counsel, hereby provides its Amended Answer and Counterclaim to the Complaint of Plaintiffs Trinity Faire, LLC ("Trinity Faire"), Steven Bever ("Mr. Bever"), and Anne Bever ("Ms. Bever").

1.      Responding to the allegations of paragraph 1, JTV admits only that this action purports to state claims for unfair competition and false designation of origin. JTV denies the remaining allegations of paragraph 1.

2.      Responding to the allegations in paragraph 2, JTV admits only that Plaintiffs are seeking injunctive and monetary relief in this action, but it denies that they are entitled to any of the relief requested.

3.      JTV admits the allegations in paragraph 3.

4.      JTV denies the allegations in paragraph 4; however, JTV admits that venue is proper in the Eastern District of Tennessee.

5.      JTV denies the allegations in paragraph 5; however, JTV admits that venue is proper in the Eastern District of Tennessee.

6.      JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.

7.      JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7.

8.      JTV admits the allegations of paragraph 8, except that it denies that it includes the word "Inc." in the name under which it does business.

9.      JTV denies the allegations in paragraph 9; however, JTV admits to having engaged in business with Plaintiffs Trinity Faire and Ms. Bever in the Eastern District of Tennessee.

10.      JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.

11.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.

13.     JTV denies the allegations in paragraph 13.

14.     JTV denies the allegations in paragraph 14.

15.     JTV admits the allegations in paragraph 15.

16.     Responding to the allegations in paragraph 16, JTV admits that it launched a turquoise based jewelry collection branded as "TEHYA OYAMA" on its shopping network and website in or around 2012. JTV denies the remaining allegations in paragraph 16.

17.     JTV denies the allegations in paragraph 17.

18.     Responding to the allegations in paragraph 18, JTV admits that Ms. Bever appeared on broadcasts for Defendant's shopping network to promote Defendant's TEHYA OYAMA brand. JTV denies the remaining allegations in paragraph 18.

19.     Responding to the allegations in paragraph 19, JTV admits that it purchased jewelry from Plaintiff Trinity Faire and that the parties entered into a Vendor Services Agreement in 2019 addressing some of these issues. JTV lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 19.

20.     Responding to the allegations in paragraph 20, JTV admits that it issued purchase orders and Plaintiff Trinity Faire issued invoices for products. JTV lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 20.

21.     Responding to the allegations in paragraph 21, JTV admits that it ordered product from Trinity Faire, set delivery schedules, and scheduled shows on which the products would be sold. JTV denies the remaining allegations in paragraph 21.

22.     JTV denies the allegations in paragraph 22.

23.     JTV denies the allegations in paragraph 23.

24.     JTV denies the allegations in paragraph 24.

25.     JTV denies the allegations in paragraph 25.

26.     Responding to the allegations in paragraph 26, JTV admits that JTV sent an e-mail and draft contract to Plaintiffs in February 2019, and that the e-mail contains a quote that is similar to what is referenced in paragraph 26. JTV states that paragraph 26 misquotes the e-mail by referring to "partnerships" rather than "partnership." JTV denies all allegations in paragraph 26 to the extent that they are inconsistent with those documents.

27.     Responding to the allegations in paragraph 27, JTV admits that the e-mail states in part that "We need to work together to get this signed and on file before the next time you are set to go on air at JTV." JTV denies the allegations of paragraph 27 to the extent that they are inconsistent with the referenced e-mail.

28.     Responding to the allegations in paragraph 28, JTV denies that JTV and Plaintiff Trinity Faire had operated for the prior seven (7) years with no contract. JTV lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 28.

29.     Responding to the allegations in paragraph 29, JTV admits that it expressed availability to discuss the terms of the Vendor Services Agreement. JTV denies the remaining allegations in paragraph 29.

30.     JTV denies the allegations in paragraph 30.

31.     JTV denies the allegations in paragraph 31.

32.     Responding to the allegations in paragraph 32, JTV admits that Plaintiff Trinity Faire and Plaintiff Anne Bever signed the Vendor Services Agreement on or around July 1, 2019, and that true and correct copies of pages 1-12 and 14 of that agreement are attached to the Complaint as Exhibit C. JTV lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 32.

33.     JTV denies the allegations in paragraph 33.

34.     JTV denies the allegations in paragraph 34.

35.     Responding to the allegations in paragraph 35, JTV admits that that the products it received from Plaintiff Trinity Faire were subject to JTV's standard quality control protocols, procedures, and testing and further admits that, in accordance with JTV's standard quality control protocols, procedures, and testing, products received from Trinity Faire were rejected from time to time. JTV denies the remaining allegations in paragraph 35.

36.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.

37.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.

38.     JTV denies the allegations in paragraph 38.

39.     Responding to the allegations in paragraph 39, JTV admits that Plaintiffs Steve Bever and Anne Bever traveled to Defendant's headquarters in or around August 2019. JTV denies the remaining allegations in paragraph 39.

40.     JTV denies the allegations in paragraph 40.

41.     Responding to the allegations in paragraph 41, JTV admits that Plaintiffs Steve Bever and Anne Bever met with buyer, Brittany Waring, from time to time. JTV denies the remaining allegations in paragraph 41.

42.     JTV denies the allegations in paragraph 42.

43.     JTV denies the allegations in paragraph 43.

44.     Responding to the allegations in paragraph 44, JTV admits that it sent a draft amendment to the Vendor Services Agreement to Plaintiffs and the Plaintiffs refused to sign it. JTV denies the remaining allegations in paragraph 44.

45.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45.

46.      Responding to the allegations in paragraph 46, JTV admits that it submitted the Purchase Orders attached as Exhibit F to the Complaint to Plaintiff Trinity Faire. The Purchase Orders speak for themselves and any allegations inconsistent therewith are denied. JTV denies the remaining allegations in paragraph 46.

47.     Responding to the allegations in paragraph 47, JTV admits that no TEHYA OYAMA show aired in October 2020 due to business considerations. JTV lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 47.

48.      Responding to the allegations in paragraph 48, JTV admits that no TEHYA OYAMA show aired in November and December 2020 due to business considerations. JTV denies the remaining allegations in paragraph 48.

49.     JTV denies the allegations in paragraph 49.

50.     Responding to the allegations in paragraph 50, JTV admits that it sent an email to Plaintiffs on February 16, 2021, and that the e-mail read in part: "After speaking within our own teams, our Programming department and Sales teams we have determined that it is time to exit the brand. As sad as we are to end this brand, we can no longer justify based on its performance over the last year." JTV denies all allegations in paragraph 50 to the extent that they are inconsistent with the referenced e-mail.

51.     Responding to the allegations in paragraph 51, JTV admits that the Plaintiffs' counsel sent the letter attached as Exhibit H. JTV denies all allegations in paragraph 51 that are inconsistent with the referenced letter.

52.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52.

53.     JTV denies the allegations in paragraph 53.

54.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54.

55.     JTV denies the allegations in paragraph 55.

56.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56.

57.     JTV denies the allegations in paragraph 57.

58.     JTV denies the allegations in paragraph 58.

59.     JTV denies the allegations in paragraph 59.

60.     JTV lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 60.

61.     JTV denies the allegations in paragraph 61.

62.     JTV denies the allegations in paragraph 62.

63.     JTV denies the allegations in paragraph 63.

64.     JTV denies the allegations in paragraph 64

65.     JTV denies the allegations in paragraph 65.

66.     Responding to the allegations in paragraph 66, JTV admits that the Plaintiffs' counsel sent the letter attached as Exhibit K. JTV denies all allegations in paragraph 51 that are inconsistent with the referenced letter.

67.     JTV denies the allegations in paragraph 67.

68.     JTV denies the allegations in paragraph 68.

## COUNT ONE

69.     JTV repeats and realleges all its responses set forth above, as though fully set forth herein.

70.     JTV denies the allegations in paragraph 70.

71.     JTV denies the allegations in paragraph 71.

72.     JTV denies the allegations in paragraph 72.

73.     JTV denies the allegations in paragraph 73.

74.     JTV denies the allegations in paragraph 74.

75.     JTV denies the allegations in paragraph 75.

## COUNT TWO

76.     JTV repeats and realleges all its responses set forth above, as though fully set forth herein.

77.     JTV denies the allegations in paragraph 77.

78.     JTV denies the allegations in paragraph 78.

79.     JTV denies the allegations in paragraph 79.

80.     JTV denies the allegations in paragraph 80.

## COUNT THREE

81.     JTV repeats and realleges all its responses set forth above, as though fully set forth herein.

82.     JTV denies the allegations in paragraph 82.

83.     JTV denies the allegations in paragraph 83.

84.     JTV denies the allegations in paragraph 84.

85.     JTV denies the allegations in paragraph 85.

86.     Defendant denies that Plaintiffs are entitled to any relief, either at law or in equity. All allegations not expressly admitted herein are denied.

## AFFIRMATIVE AND AMPLIFYING DEFENSES

1.     This action was filed in an improper venue given the operative forum selection clauses in Section 19 of the Jewelry Television® Terms and Conditions of Purchase for Jewelry, Gemstones and Other Products ("Terms and Conditions") and Section 19 of the Vendor Services Agreement; however, the case has now been transferred to the proper venue.

2.     The claims in this action are barred, in whole or in part, by the applicable statutes of limitation.

3.     JTV asserts the affirmative defenses of laches, acquiescence, and estoppel.

4.     Plaintiffs' state law claims are preempted, in whole or in part, by the federal Lanham Act and/or Copyright Act.

5.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of "first sale" or "exhaustion" under trademark law.

6. Plaintiffs have no protectable trademark rights in the TF Mark and therefore cannot prevail on Counts I or II of the Complaint.

7. Plaintiffs have not obtained federal registration for the alleged TF Mark required to bring a claim for trademark infringement under 15 U.S.C. § 1114(1), as alleged in Count II.

8. Plaintiffs have not pleaded facts that would support a reasonable inference of likelihood of confusion as required to state a claim for trademark infringement under Count I.

9. Plaintiffs' quasi-contractual claim for unjust enrichment under Count III is barred because the existence of a valid and enforceable contract governs the subject matter of the claim.

10. Plaintiffs have failed to allege a benefit was conferred upon Defendant that would make it inequitable for Defendant to retain that benefit without compensating Plaintiff for the value of the same, as required to state a claim for unjust enrichment under Count III.

11. Pursuant to the parties' operative agreements, Plaintiffs released and waived all claims and assigned to JTV all rights related to content using Ms. Bever's name, voice, biography, and/or visual likeness.

12. During the parties' business relationship, the products at issue in this action were always sold under JTV's TEHYA OYAMA brand and trademark.

13. Under the agreements between JTV and Trinity Faire, the latter's damages are limited to the amount paid by JTV for Products pursuant to Purchase Orders and/or for the sums paid to Trinity Faire by JTV during the year before this action was filed.

14. JTV is entitled to its attorney fees and costs under the parties' operative agreements.

15. JTV is entitled to its attorney fees and costs under the Lanham Act because this is an exceptional case or controversy given the meritless nature of Plaintiffs' claims.

16.    Plaintiffs are not entitled to a jury trial for equitable remedies, including an accounting of profits and injunctive relief.

17.    Steven Bever is not a proper party to this action and has failed to state any claim for which relief could be granted.

**DEFENDANT/COUNTERCLAIM-PLAINTIFF JTV'S COUNTERCLAIM
AGAINST PLAINTIFFS/COUNTERCLAIM-DEFENDANTS TRINITY FAIRE
AND MS. ANNE BEVER**

Defendant/Counterclaim Plaintiff America's Collectibles Network, Inc. dba Jewelry Television ("JTV"), for its Counterclaim against Plaintiffs/Counterclaim Defendants Trinity Faire, LLC ("Trinity Faire"), and Ms. Anne Bever ("Ms. Bever"), alleges and states as follows.

**Nature of the Action**

1.      This is an action for breach of contract under the parties' Vendor Services Agreement and for relief under JTV's purchase orders and its vendor terms and conditions.

**Jurisdiction and Venue**

2.      This action arises under the laws of the state of Tennessee.

3.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because this Counterclaim arises out of the same nucleus of operative facts as the Counterclaim-Defendants' claims set forth in the Complaint, such that this Counterclaim and the claims set forth in the Complaint comprise a single case or controversy between the parties.

**Parties**

4.      Upon information and belief, Counterclaim-Defendant Trinity Faire is a limited liability company formed under the laws of Arizona and doing business in Phoenix, Arizona.

5.      Upon information and belief, Counterclaim-Defendant Ms. Bever is an individual residing in Phoenix, Arizona, and an employee of Trinity Faire. Upon further information and belief, Ms. Bever is married to Plaintiff Steven Bever, also a resident of Phoenix, Arizona ("Mr. Bever," and collectively with Ms. Bever, "the Bevers").

6.      Counterclaim-Plaintiff JTV is a corporation that is incorporated in Tennessee and has a place of business at 9600 Parkside Drive, Knoxville, TN 37922.

## Facts

7.     JTV's mission is to open the world of jewelry and gemstones to everyone. In advancing its mission, JTV has partnered with numerous individuals and companies around the world, including Counterclaim-Defendants, to manufacture, buy, and sell jewelry and related products to the public.

8.     To promote and sell products to the public, JTV produces television broadcasts reaching all 50 states and available to over 60 million homes. JTV also promotes and sells products on its website, www.jtv.com, and through its related mobile apps.

9.     The majority of JTV's broadcast programming is aired live or aired soon after a live broadcast of the same.

10.     In or around 2012, JTV began purchasing jewelry products that were, on information and belief, designed and/or manufactured by the Bevers through Global Sourcing LLC ("Global Sourcing"), a third-party vendor.

11.     On information and belief, the Bevers formed Trinity Faire, LLC, in or around 2015 and have owned and operated Trinity Faire continuously ever since.

12.     After several years of purchasing products that were, on information and belief, designed and/or manufactured by the Bevers through Global Sourcing, JTV began purchasing products directly from Trinity Faire.

13.     Throughout the years, JTV and Trinity Faire have executed several agreements governing the supply, purchase, promotion, and resale of jewelry products.

14.     During the business relationship between the parties, products supplied by Trinity Faire were exclusively promoted and sold by JTV under the TEHYA OYAMA brand name and trademark, which JTV launched and first started using in or around February 2013.

15.     At all relevant times, JTV was the sole owner of the TEHYA OYAMA brand and trademark.

16.     As part of JTV's standard vendor onboarding process, Trinity Faire entered into several Vendor Setup Agreements, the first of which was executed in January 2016, the second of which was executed in July 2017, and the third of which was executed in August 2019. True and correct copies of the three Vendor Setup Agreements are attached hereto as **Exhibits L**, **M**, and **N**, respectively.[1]

17.     In signing each of the Vendor Setup Agreements, Trinity Faire affirmed their acknowledgement of and agreed to JTV's Terms and Conditions of Purchase for Jewelry, Gemstones and Other Products ("Terms and Conditions"), a true and correct copy of which is attached hereto as **Exhibit O**.

18.     JTV's Terms and Conditions are also accessible to JTV's vendors on JTV's vendor website.

19.     Each of the purchase orders JTV sent to Trinity Faire contained language in bold print stating that they were subject to JTV's Terms and Conditions located on JTV's website and incorporating the same by reference into the purchase orders. Representative examples of JTV's purchase orders to Plaintiffs are attached to the Complaint as Exhibit F.

20.     Section 4 of the Terms and Conditions, which are incorporated by reference into every purchase order issued by JTV, states that "[a]ll Products shall be subject to final inspection and acceptance by JTV at its facility notwithstanding prior payment or inspection at Seller's facility."

---

[1] Plaintiffs cited to Exhibits A – K in their Complaint. To simplify future references, the exhibits to this Counterclaim begin with Exhibit L.

21.     In accordance with JTV's standard quality control protocols, procedures, and testing, JTV regularly warned Trinity Faire about inspection failures throughout their business relationship and periodically rejected products received from Trinity Faire.

22.     Section 21 of the Terms and Conditions states that any damages arising out of or relating to any purchase order are limited to the amount paid by JTV for Products pursuant to Purchase Orders.

23.     Section 22 of the Terms and Conditions states that "[i]f JTV is required to enforce any of its rights under the Purchase Order in litigation, JTV shall be entitled to recover in any such litigation its reasonable costs and attorney's fees incurred in such litigation."

24.     In addition to the three Vendor Setup Agreements the parties entered into over the course of their relationship, they also entered into a Vendor Services Agreement dated July 1, 2019 (the "Vendor Services Agreement"). A true, correct, and complete copy of the Vendor Services Agreement as executed by Trinity Faire is attached hereto as **Exhibit P**.

25.     Prior to execution of the Vendor Services Agreement, JTV sent a proposed draft of the contract to Trinity Faire by email on or about February 15, 2019, explaining that JTV had "deemed it necessary to come to official service agreements with all of [its] on air guests." A true and correct copy of that email is attached to the Complaint as Exhibit B.

26.     JTV encouraged Trinity Faire and the Bevers to review the proposed Vendor Services Agreement with counsel. *Id.* JTV was informed and believes that Trinity Faire and the Bevers retained counsel who advised them in negotiating the terms of that agreement.

27.     The Vendor Services Agreement is the product of mutual negotiation and is valid and enforceable.

28.     Section 5 of the Vendor Services Agreement contained (i) a release and waiver of any and all past, present, and future claims by Trinity Faire against JTV "arising out of the use, reproduction, distribution, broadcast, performance, or display" of the "name, voice, biography, and/or visual likeness" of Ms. Bever—Trinity Faire's designated spokesperson under the Vendor Services Agreement—as part of any programming in which Ms. Bever appeared, (ii) an assignment of all rights, title, and interest in and to the same content and (iii) a covenant not to sue concerning the released claims. Ex. P.

29.     Attached to the Vendor Services Agreement as Exhibit A was an undertaking executed by Ms. Bever, individually, on July 1, 2019, in which she acknowledged and agreed to grant certain rights to JTV, including by way of the following release, waiver, and licensing provisions set forth in Paragraph 2 (in relevant part):

> 2. **Grant of Rights.** I, Anne Bever, hereby grant the Company a perpetual, world-wide, paid-up, royalty-free license to use, modify, reproduce, distribute, and display, in any form or media now known or later developed, my name, voice, biography, and/or visual likeness (collectively the "Personal Attributes"), which the Company may use in its sole discretion, including without limitation, on any Broadcast, on social media platforms, on JTV's website and in any marketing, promotional or advertising materials (collectively the "Programming") to sell Product or as otherwise mutually agreed upon between the parties.
>
> I hereby release and waive any and all claims I may have now or in the future against the Company, its agents, employees, licensees and assigns for invasion of privacy, right of publicity, copyright or trademark infringement, defamation or any other cause of action arising out of the use, reproduction, distribution, broadcast, performance or display of my name, voice, biography, and/or visual likeness (collectively the "Personal Attributes") as part of any Company Broadcast that I appear on or have appeared on, as well as in any related marketing, promotional or advertising materials (collectively "the Programming"). I further (a) waive any right to inspect or approve any Programming that may be created containing the Personal Attributes and (b) covenant not to sue the Company, its agents, employees, licenses and assigns for the claims in this Section.

30.     Section 15 of the Vendor Services Agreement, which the parties expressly agreed would survive termination of the Vendor Services Agreement, limited damages for any action

arising out of contract or tort as between the parties to the total of all amounts JTV paid to Trinity Faire in the preceding year. *Id.*

31.     Section 20 of the Vendor Services Agreement provides, "The non-prevailing party in any action incident to the enforcement of this Agreement shall pay all the prevailing party's reasonable attorney fees, expert witness fees, expenses, court costs and all other costs reasonably incurred in such litigation." *Id.*

32.     The last time Ms. Bever appeared live on JTV programming in connection with the TEHYA OYAMA brand was on or about January 13, 2021.

33.     On or about February 16, 2021, JTV's Vice President of Merchandising, Haley Maples, notified Trinity Faire that JTV was winding down the TEHYA OYAMA brand and would no longer be placing orders from Trinity Faire for the same, but that there were other business opportunities that Trinity Faire could pursue with JTV. A true and correct copy of that email is attached to the Complaint as Exhibit G.

34.     On March 30, 2021, counsel for Trinity Faire sent JTV what purported to be a notice of non-renewal of the Vendor Services Agreement. A true and correct copy of that communication is attached to the Complaint as Exhibit H.

35.     Almost nine months later, on December 14, 2021, counsel for Trinity Faire sent a demand letter to JTV asserting causes of action for copyright and trademark infringement. A true and correct copy of that communication is attached to the Complaint as Exhibit K.

36.     JTV responded with a letter dated December 30, 2021, denying the material accusations in the demand letter. A true and correct copy of JTV's response letter is attached hereto as **Exhibit Q**.

37.     In its response letter, JTV denied the allegations of copying and counterfeiting asserted by Counterclaim-Defendants' counsel, and in response to the alleged discrepancies between gross and net quantities sold, explained that customer cancellations and returns of between 25% and 35% are common in the home shopping industry.

38.     The gross and net quantities sold of the products identified as TRQ230B, TRQ230R, and TRQ483—namely, those products identified in Plaintiff's Complaint[2]—are shown in the Sales History for each product, which are attached hereto as **Exhibits R, S**, and **T**, respectively.

39.     As shown in the Sales Histories, the gross and net quantities sold of the products at-issue in the Complaint are as follows:

- TRQ230B: Gross Qty Sold = 3,637, Net Qty Sold = 2,042, Ex. R;

- TRQ230R: Gross Qty Sold = 1,366, Net Qty Sold = 831, Ex. S; and

- TRQ483:  Gross Qty Sold = 608, Net Qty Sold = 393, Ex. T.

40.     The net quantities sold for each of the products identified as TRQ230B, TRQ230R, and TRQ483 are less than the quantities of these products that JTV received from Trinity Faire. The difference between gross and net quantity sold is attributable to product returns, order cancellations, and the like.

41.      JTV has never stamped "TF" onto any piece of jewelry that it has sold.

---

[2] The Complaint refers to "Item TRD230B" and a purchase order quantity of "2,152." Compl. at ¶ 54. JTV has no record of an Item TRD230B; however, JTV issued purchase orders for 2,153 units of Item TRQ230B. In addition, the purchase orders attached to the Complaint as Exhibit F use the prefix "TRQ" for the items listed. *Id.* at ¶ 46, Ex. F. JTV assumes for purposes of this pleading that the references to Item "TRD230B" and the amount "2,152" in the Complaint are typographical errors. True and correct copies of the Purchase Order Histories for these products are attached hereto as collective **Exhibit U**.

42.     JTV has always been and is still entitled to sell each product or jewelry item it purchased from Trinity Faire.

## COUNTERCLAIM COUNT I
### Breach of Contract

43.     JTV repeats and realleges all its above allegations in this Counterclaim, as though fully set forth herein.

44.     JTV, Trinity Faire, and Ms. Bever entered into a valid and enforceable Vendor Services Agreement on or about July 1, 2019.

45.     By bringing the claim for unjust enrichment based on the "utiliz[ation of] Plaintiff Mrs. Bever to promote and sell" products, Compl. at ¶ 83, Counterclaim-Defendants are in material breach of the Vendor Services Agreement.

46.     In particular, pursuant to Section 5 of the Vendor Services Agreement, Trinity Faire waived and released JTV from all past, present, and future claims related to Ms. Bever's participation in every JTV broadcast program on which she ever appeared and covenanted not to sue JTV concerning such claims.

47.     Moreover, pursuant to Paragraph 2 of Exhibit A to the Vendor Services Agreement, Ms. Bever (i) granted JTV a license to use her name, voice, and/or likeness to promote and sell products on any JTV programming, which including broadcasts, social media, and JTV's website, (ii) waived and released JTV from all past, present, or future claims related to the same, and (iii) covenanted not to sue JTV for such claims.

48.     As result of Counterclaim-Defendants' breach, JTV has suffered harm in an amount that cannot be easily quantified, including by having to defend itself in this lawsuit.

49.     JTV is entitled to damages as provided under Section 15 of the Vendor Services Agreement, injunctive relief under Section 17, as well as its attorney fees and other expenses incurred because of this lawsuit under Section 20.

50.     As a result of the Counterclaim Defendants' allegations, JTV has been forced to enforce terms of its purchase orders with Trinity Faire, all of which incorporated JTV's Terms and Conditions by reference.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing allegations and claims, Defendant JTV requests that judgment be entered in its favor as to the Counterclaim above and on each of Plaintiffs' claims in the Complaint, with prejudice, and prays that the Court grant the following relief:

A.     An order dismissing Counts I, II, and III of the Plaintiffs' Complaint with prejudice;

B.     An order enjoining Counterclaim-Defendants from pursuing claims or relief released in, waived by, and/or otherwise barred by virtue of the Vendor Services Agreement;

C.     An order awarding Counterclaim-Plaintiff its damages as provided under the Vendor Services Agreement and the Terms and Conditions;

D.     An order awarding Counterclaim-Plaintiff its costs and expenses, disbursements, exemplary damages, and attorney fees incurred in this action, with interest, in an amount to be determined; and

E.     An award to Defendant of such other and further relied as the Court deems just and equitable.

    Dated: November 23, 2022          Respectfully submitted,

                                              *s/John T. Winemiller*
                                              John T. Winemiller (021084)

Ian G. McFarland (030549)
Merchant & Gould, P.C.
800 S. Gay Street, Suite 2150
Knoxville, TN 37929
Telephone: (865) 380-5960
Fax: (612) 332-9081
jwinemiller@merchantgould.com
imcfarland@merchantgould.com

River E. Lord (*pro hac vice application to be filed*)
Merchant & Gould P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (facsimile)
RLord@merchantgould.com

**Counsel for Defendant**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November, 2022, the foregoing document was electronically filed on this Court's CM/ECF system, which caused a copy of the same to be served on all counsel of record.

*s/Megan Fee*