| | |
|---|---|
| TRINITY FAIRE LLC, STEVEN BEVER, ) <br> *and* ANNE BEVER, ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> AMERICA'S COLLECTIBLES NETWORK, ) <br> INC., *d/b/a* JEWELRY TELEVISION, ) <br> ) <br> *Defendant.* ) <br> ───────────────────────────── ) <br> ) <br> AMERICA'S COLLECTIBLES NETWORK, ) <br> INC., *d/b/a* JEWELRY TELEVISION, ) <br> ) <br> *Counter-Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> TRINITY FAIRE LLC, *and* ANNE BEVER, ) <br> ) <br> *Counter-Defendants.* ) <br> # | No. 3:22-cv-417 <br><br> Judge Curtis L. Collier <br> Magistrate Judge Debra C. Poplin |

# **M E M O R A N D U M**

Before the Court is a motion for summary judgment filed by Defendant, America's Collectibles Network, Inc., d/b/a Jewelry Television, on the unfair competition claims of Plaintiffs, Trinity Faire LLC, Steven Bever, and Anne Bever. (Doc. 84.) Defendant also moves the Court for entry of summary judgment in its favor on its counterclaim for breach-of-contract. (*Id*.) Plaintiffs responded late in opposition (Doc. 95), and Defendant replied (Doc. 100). Also before the Court is a motion by Defendant to strike Plaintiffs' expert disclosure and exclude expert testimony. (Doc. 89.) Plaintiffs responded in opposition (Doc. 95), and Defendant replied (Doc. 101). Plaintiffs move to set aside Defendant's motion for summary judgment

and motion to strike expert disclosure and exclude expert testimony pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. (Doc. 97.) Defendant has responded in opposition. (Doc. 102.)

Plaintiffs' motion to set aside Defendant's pending motions (Doc. 97) pursuant to Rule 60(b)(1) will be **DENIED**. The Court will **GRANT** Defendant's motion for summary judgment (Doc. 84) as to Plaintiffs' unfair competition claim, and Plaintiffs' case will be **DISMISSED**. The Court will **GRANT** Defendant/Counter-Plaintiff's motion for summary judgment (Doc. 84) as to its breach-of-contract counterclaim. The motion to strike Plaintiffs' expert disclosure and exclude expert testimony (Doc. 89) will be **DENIED AS MOOT.**

### I.     BACKGROUND

Defendant/Counter-Plaintiff, America's Collectibles Network, Inc., doing business as Jewelry Television ("Jewelry TV"), sells jewelry through television broadcasts, a website, and mobile applications.

Plaintiff Steven Bever ("Mr. Bever") and Plaintiff/Counter-Defendant Anne Bever ("Ms. Bever") design or manufacture jewelry products. (Doc. 1 at 3.) Around 2012, Jewelry TV began purchasing, through a third-party vendor, jewelry products designed or manufactured by Mr. and Ms. Bever. (*Id.*) Around 2015, Mr. and Ms. Bever formed Plaintiff/Counter-Defendant Trinity Faire, LLC ("Trinity Faire"). (Doc. 41 at 13.) After that, Jewelry TV began buying jewelry products directly from Trinity Faire rather than using an intermediary. (*Id.*)

Ms. Bever acted as Trinity Faire's designated spokesperson for Jewelry TV's television broadcasts offering Trinity Faire's jewelry for sale to the public. From 2012 until late 2018, Ms. Bever regularly appeared on the television programming as an expert guest host to promote the jewelry. (Doc. 1 at 4.)

On July 1, 2019, Jewelry TV and Trinity Faire executed a Vendor Services Agreement (the "Agreement").[1] Among other things, section five of the Agreement released and waived all of Trinity Faire's claims against Jewelry TV "arising out of the use, reproduction, distribution, broadcast, performance or display of [Ms.] Bever's name, voice, biography, and/or visual likeness (collectively the 'Personal Attributes') as part of any [Jewelry TV] Broadcast that [Ms.] Bever appears on or has appeared on." (Doc. 41-5 at 3.) Trinity Faire also covenanted not to sue Jewelry TV "for the claims in this section 5." (*Id.*) The Agreement included as Exhibit A an agreement by Ms. Bever individually to release and waive all claims against Jewelry TV arising out of her Personal Attributes, as defined above, and a covenant not to sue Jewelry TV for those claims. (*Id.* at 9.)

Ms. Bever's last live television appearance for Jewelry TV took place on January 13, 2021. On February 16, 2021, Jewelry TV notified Trinity Faire that it would no longer place orders with Trinity Faire for jewelry, and on March 30, 2021, Trinity Faire sent Jewelry TV a notice of non-renewal of the Agreement. Following this, an attorney representing Trinity Faire and Steven Beaver sent Jewelry TV a letter in December of 2021 asserting claims for copyright and trademark infringement. (Doc. 1-2 at 65–70.) The letter demanded Jewelry TV pay Plaintiffs Trinity Faire and Steven Bever twelve million dollars to settle the claims. (*Id.* at 70.) Jewelry TV rejected this demand and reminded Plaintiffs that the Agreement required any lawsuit to be filed in Tennessee and included an attorney-fee-shifting provision for the prevailing party. (Doc. 41-6.)

Plaintiffs filed suit against Defendant on June 29, 2022, in the District of Arizona, asserting causes of action for unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et*

---

[1] Jewelry TV and Trinity Faire also executed Vendor Setup Agreements in January 2016, July 2017, and August 2019.

*seq.*, common-law trademark infringement under the Lanham Act, and unjust enrichment. (Doc. 1.) Defendant answered but moved to transfer the case to the Eastern District of Tennessee. (Docs. 17, 24.) Plaintiffs did not object, and the District of Arizona transferred the case to this district. (Docs. 26, 29.)

In this Court, on November 23, 2022, Defendant filed a counterclaim against Trinity Faire and Ms. Bever. (Doc. 41.) The counterclaim asserts a single cause of action for breach of contract, alleging Trinity Faire and Ms. Bever breached the Agreement by asserting a claim for unjust enrichment against Trinity Faire for allegedly using Ms. Bever to promote and sell copies of Trinity Faire's products. (*Id.* at 19–20.) On March 23, 2023, Plaintiffs filed an amended complaint, alleging only a single count for unfair competition. (Doc. 77.)

On February 6, 2023, this Court entered a Scheduling Order, which set the deadline for fact discovery to end by March 31, 2024. (Doc. 66 at 2.) In February of 2024, the month before discovery was to end, Plaintiffs' counsel, Mark Williams, faced personal struggles, as his wife was diagnosed with breast cancer. (Doc. 98-2.) Mr. Williams's wife was treated for her illness between mid-February and mid-May of 2024. (*Id*. at 2).

Leading up to the March 31, 2024, discovery deadline, none of the four attorneys of record[2] for the Plaintiffs ever served discovery requests or noticed depositions. Mr. Williams admits he "made an excusable litigation mistake" and "failed to timely serve discovery requests" because he was "distracted by the cancer diagnosis, the treatment [his] wife underwent and the needs of [his] family." (Doc 98 at 4.)

---

[2] There were four attorneys of record for the Plaintiffs by January 6, 2023. (*See* Docs. 47–49, 56.) On September 21, 2023, Andrea S. Tazioli and Michael McCanse filed a notice of withdrawal of counsel. (Doc. 83.) On July 25, 2024, Kevin Elkins filed a notice of withdrawal of counsel. (Doc. 104.) Mark Williams remains attorney of record.

4

Although Plaintiffs did not conduct their own discovery during Mr. Williams' wife's treatment, Plaintiffs continued to participate in discovery by serving written interrogatory answers and producing documents to Defendants. On February 21, 2024, Plaintiffs responded to Defendant's first discovery requests. (*See* Docs. 88-4, 88-5, 88-6, 88 at 2.) On March 20, 2024, Plaintiffs confirmed receipt of Defendant's second set of discovery requests, and on March 31, 2024, Plaintiffs served interrogatory answers and produced additional documents to Defendant. (*See* Docs. 88-3, 88-7.) Plaintiffs never filed a motion to extend discovery deadlines with the Court, nor informed Defendant of counsel's personal situation during this time. (Doc. 102 at 5.)

Before the Court is a motion for summary judgment filed by Defendant on Plaintiffs' unfair competition claim. (Doc. 84.) Defendant also moves the Court for entry of summary judgment in its favor on its counterclaim for breach-of-contract. (*Id.*) Plaintiffs' response to the motion for summary judgment was due on May 31, 2024, but Plaintiffs responded in opposition a month late. (*See* Doc. 95.)

Before the Court is also a motion by Defendant to strike Plaintiffs' expert disclosures and exclude expert testimony (Doc. 89) because according to Defendant, Plaintiffs' expert disclosures were late and incomplete. (Doc. 90 at 2–3.) Defendant argues that Plaintiffs' expert disclosures "did not include the information about the identified experts' proposed opinions required by Rule 26(a), and Plaintiffs did not seek to extend or modify the expert deadline under Rule 16(b)(4)." (Doc. 102 at 5.) Plaintiffs moved for a seven-day extension to respond to the motion to strike, which this Court granted. (Docs. 92, 93.) Plaintiffs failed to respond by the new deadline, however, and on June 30, 2024, Plaintiffs untimely filed their response. (Doc. 95.)

Rather than responding on the merits of either of these motions, Plaintiffs responded by "incorporat[ing] their arguments filed with the Court on June 28, 2024 by reference with this

response." (Doc. 95 at 1.) Accordingly, Plaintiffs responded by asking the Court to set aside Defendant's motion for summary judgment and motion to strike expert testimony pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. (*See* Doc. 94.) Plaintiffs' counsel argues discovery should be reopened because he "committed a legal mistake that amounts to excusable neglect" when distracted by his wife's breast cancer treatment. (Doc. 97 at 2.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can

meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Defendant moves for summary judgment as to Plaintiffs' unfair competition claims and Defendant/Counter-Plaintiff's breach-of-contract counterclaim. (Doc. 84.) Defendant also moves to strike Plaintiffs' expert testimony. (Doc. 89.) In response, Plaintiffs move to set aside these motions pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Doc. 97.) The Court first turns to Plaintiffs' motion to set aside Defendant's motion for summary judgment and motion to strike expert testimony.

### A. Plaintiffs' Motion to Set Aside Defendant's Pending Motions

Plaintiffs move to set aside Defendant's motion for summary judgment and motion to strike Plaintiffs' expert testimony and asks the Court to reopen discovery. (Doc. 98 at 1–2.)

Rule 60 states, "[o]n motion and just terms, the court may relieve a party or its legal representative from a *final* judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added). As the plain language of the rule implies, "Rule 60(b) applies only to 'final' orders." *Payne v. The Courier-J.*, 193 F. App'x 397, 400 (6th Cir. 2006) (citing *Mallory v. Eyrich,* 922

7

Case 3:22-cv-00417-CLC-DCP   Document 105   Filed 12/03/24   Page 7 of 16
PageID #: 510

F.2d 1273, 1277 (6th Cir. 1991)).  In this case, there has not been a final judgment, order, or proceeding, and therefore, Rule 60(b) is not the proper basis for challenging these pending motions.  *See id.*

Rather, requests to extend discovery are typically governed by Rule 16.  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  District courts have "substantial discretion over pretrial matters such as the conduct of discovery." *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-cv-88, 2017 WL 1155046, at *2 (E.D. Tenn. Mar. 27, 2017).  Rule 6(b), however, provides the appropriate standard where a party seeks an extension of a discovery deadline that has already passed.  *Gardner v. Dye*, No. 3:15 C 00669, 2016 WL 9244200, at *4 (M.D. Tenn. July 1, 2016).

Rule 6(b) states, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).   The movant must first establish good cause.  *Allen v. Cam's Transp. Co.*, No. 3:22-CV-403, 2024 WL 3852133, at *3 (E.D. Tenn. Aug. 16, 2024).  Good cause is measured by the moving party's diligence in attempting to meet the deadline. *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (quoting *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)).

Once good cause is established, the Court considers excusable neglect.  The standard for proving excusable neglect is a high bar and "can be met only in extraordinary cases."  *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005).  Courts use the following factors to determine if the moving party has shown excusable neglect:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)). The reason for the delay is given the greatest weight. *Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 459 (6th Cir. 2014).

Plaintiffs' counsel, Mark Williams, admits that he was distracted and failed to meet his discovery obligations. (Doc. 98 at 3.) However, he argues discovery should be reopened for excusable neglect because he was assisting his wife during her cancer treatment. (*Id*. at 2–3.) Relying on Rule 60(b)(1) of the Federal Rules of Civil Procedure and the *Pioneer* factors, Plaintiffs argue that this litigation mistake is excusable because Plaintiffs' delay was due to circumstances beyond their control. (*Id*. at 5.) Plaintiffs also argue there is no danger of prejudice to the non-moving party and plaintiffs' delay will not impact the judicial proceedings. (*Id*. at 4–5.)

Here, while the Court recognizes the struggles of Plaintiffs' counsel, Plaintiffs have not shown good cause to reopen discovery. *See Leary,* 349 F.3d at 906. This lawsuit was filed on June 29, 2022. (*See* Doc. 1.) After the Court put forth the Scheduling Order on February 6, 2023, the parties had over a year to complete fact discovery by March 31, 2024. (*See* Doc. 66.) The Court understands that Plaintiffs' counsel was "distracted" during the February 2024 month due to his wife's health concerns. (Doc. 98 at 3.) Nevertheless, counsel does not explain why discovery was not initiated before this time. Nor does counsel explain why the other attorney of record at the time failed to serve discovery requests.

Moreover, Plaintiffs' failure to ask for extensions shows a lack of diligence. Despite Mr. Williams's personal struggles, Plaintiffs did not inform Defendant of counsel's personal situation and even continued to respond to discovery requests. (Doc. 102 at 5.) During this time, Plaintiffs never sought to modify the discovery deadlines with the Court. The Court finds that

9

Plaintiffs have not acted in good faith in waiting until July 1, 2024, to act on their failure to meet discovery deadlines that expired more than three months prior. *See Adkisson v. Jacobs Engineering Group, Inc.*, No. 3:13-CV-505, 2018 WL 1248159, *1, *7 (E.D. Tenn. 2018). Plaintiffs also did not request an extension to respond to Defendant's motion for summary judgment, which Defendant notes was due two weeks after Mr. Williams's wife's treatment had ended. *See Korn v. Paul Revere Life Ins. Co.*, 382 Fed. App'x. 443, 450 (6th Cir. 2010) (noting the moving party did not show good cause for "why he failed to move for the amendment at a time that would not have required a modification of the scheduling order."). And although Plaintiffs did seek an extension to respond to Defendant's motion to strike expert disclosures, Plaintiffs failed to timely respond within the extended timeframe. (*See* Docs. 93, 95.) The Court finds Plaintiffs have not shown due diligence in attempting to meet their deadlines.

Plaintiffs' "failure to show good cause makes it impossible to satisfy the standard under Rule 6." *Adkisson*, No. 3:13-CV-505, 2018 WL 1248159, at *7. But even if Plaintiffs could demonstrate good cause, the *Pioneer* factors do not weigh in favor of granting their request under the excusable neglect standard.

First, the Court finds Defendant would suffer prejudice if discovery were reopened. *See Union Univ. v. Evanston Ins. Co.,* No. 120CV01254, 2022 WL 4389709, at *3 (W.D. Tenn. Sept. 22, 2022). The discovery sought lacks specificity, as Plaintiffs ask to reopen discovery "without any defined parameters or limitations." *See FedEx Corp. v. United States*, No. 08-2423, 2011 WL 2023297, at *3 (W.D. Tenn. Mar. 28, 2011). Defendant would therefore incur extra costs associated with production of the discovery sought. Further, reopening discovery after a defendant has already filed a motion for summary judgment almost always supports a finding of prejudice because it would "delay the case, result in additional costs, and disturb Defendant['s]

10

expectation of finality." *Smigelski v. Cluley,* 2022 WL 3584354, *2 (S.D. Ohio Aug. 22, 2022). The danger of prejudice to Defendant weighs against Plaintiffs.

As for the second factor, the Court finds the delay caused by this request would impact future judicial proceedings. Reopening discovery would likely require a resetting of the trial currently set for February 10, 2025. (*See* Doc. 66 at 3.) This case is over two years old and should be resolved as scheduled. *See Reiner v. Nishimori*, No. 3:15-0241, 2017 WL 11476386, at *1 (M.D. Tenn. Feb. 15, 2017). The length of the delay and its potential impact on judicial proceedings weighs against Plaintiffs.

Next, the Court must consider the reason for the delay, whether the delay was within the reasonable control of Plaintiffs, and whether the late-filing party acted in good faith. *See Nafziger*, 467 F.3d at 522. The Court recognizes the reason for the delay was due to personal struggles of Plaintiffs' counsel who was assisting his wife amidst breast cancer treatment. However, the Court finds the need for additional discovery to be precipitated by the Plaintiffs' neglect and not out of Plaintiffs' control.

As explained above, Plaintiffs do not explain why they did not conduct discovery before February 2024, only a month before fact discovery was set to end. Mr. Williams admits that he failed to meet his discovery obligations (Doc. 98 at 3), but Plaintiffs do not explain why the other attorney of record, Kevin Elkins, failed to meet his obligations.[3] Co-counsel has a shared responsibility and this failure to coordinate regarding the obligations of their client "epitomizes a lack of care and diligence." *B&D Partners v. Pastis*, No. 05-5954, 2006 WL 1307480, at *3 (6th Cir. May 9, 2006). Plaintiffs' failure to timely respond to Defendant's motion for summary

---

[3] It should also be noted that Andrea S. Tazioli and Michael McCanse were attorneys of record as well until September 21, 2023. From the February 2023 scheduling order until September 23, 2023, there was no discovery completed.

11

judgment or "inform the court of any requested extensions" is also not excusable neglect. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000).

Accordingly, Plaintiffs have not met their strict burden for excusable neglect. *See Turner*, 412 F.3d at 650. The Court finds these factors, on the whole, weigh against granting Plaintiffs' request, and therefore, it will not reopen the discovery deadline. Plaintiffs' motion to set aside defendant's pending motions pursuant to Rule 60(b)(1) will be **DENIED**.

### B. Defendant's Motion for Summary Judgment

The Court now turns to Defendant's motion for summary judgment as to Plaintiffs' unfair competition claims and Defendant/Counter-Plaintiff's breach-of-contract counterclaim. (Doc. 84.)

#### 1. Plaintiffs' Unfair Competition Claim

Defendant moved for summary judgment as to Plaintiffs' unfair competition claim because: (1) Plaintiffs have not identified evidence to show the Defendant used the Trinity Faire mark without authorization; (2) Plaintiffs failed to disclose a computation of their alleged damages or even any evidence of damages; and (3) Plaintiffs claim is barred by laches due to their unreasonable and prejudicial delay in filing this suit. (Doc. 85 at 9.)

Plaintiffs failed to timely respond to the motion for summary judgment. A month after the deadline to respond, Plaintiffs filed a motion to set aside Defendant's motion for summary judgment. (Doc. 97, *see also* Doc. 94.) Plaintiffs responded to the motion for summary judgment (Doc. 95) by incorporating their motion to set aside Defendant's pending motions (Doc. 94). Rather than addressing the merits of the motion for summary judgment, Plaintiffs asked to reopen discovery and set aside Defendant's motion due to excusable neglect because Plaintiffs' counsel was assisting his wife in her breast cancer treatment. (Doc. 95.) Defendant argues that

12

"Plaintiffs' late [r]esponse requesting only to 'set aside' the [m]otion is, literally, no opposition." (Doc. 100 at 3.)

As an initial matter, the Court views Plaintiffs' failure to timely respond to Defendant's Motion for Summary Judgment as "a waiver of any opposition to the relief sought." *See* E.D. Tenn. L.R. 7.2. "This waiver of opposition alone is a sufficient basis to grant Defendant's [m]otion." *See Foster v. Tucker*, No. 3:20-CV-340, 2023 WL 2335348, at *4 (E.D. Tenn. Mar. 2, 2023). Nevertheless, even if Plaintiffs had timely responded, they still failed to address the claims in the motion for summary judgment. Plaintiffs merely incorporated their motion to set aside Defendant's motion for summary judgment in their response, requesting extensions due to excusable neglect. (Doc. 95.) A district court may decline to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment. *Hicks v. Concorde Career Coll.*, 449 Fed. App'x. 484, 487 (6th Cir. 2011). This Court finds that Plaintiffs abandoned their claim of unfair competition. *Id.*; *see also Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). Plaintiffs provide no record evidence to support their claim and have not identified any damages. Therefore, the Court will **GRANT** Defendant's motion for summary judgment as to Plaintiffs' unfair competition claim.

### 2. Defendant/Counter Plaintiff's Counterclaim for Breach of Contract

Defendant/Counter-Plaintiff also moves for summary judgment on her counterclaim for breach-of-contract. (Doc. 85 at 16–19.) Defendant/Counter-Plaintiff argues Defendant "breached the [Agreement] by alleging unjust enrichment in the original [c]omplaint." (*Id.* at 16.)

Tennessee law allows a party to sue for the breach of a covenant not to sue. *Kreutzmann v. Bauman*, 609 S.W.2d 736, 739 (Tenn. Ct. App. 1980); *see also Oliver v. Williams*, 83 S.W.2d

13

271, 273 (Tenn. Ct. App. 1935). Under Tennessee law, the elements of a claim for breach of contract are: "(1) the existence of an enforceable contract; (2) nonperformance amounting to breach of the contract; and (3) damages caused by the breach of contract." *Coria v. Sport Pontoons, LLC*, No. 1:22-CV-199, 2024 WL 2703131, at *3 (E.D. Tenn. Mar. 15, 2024). By failing to respond to the merits of the motion for summary judgment, Plaintiffs/Counter-Defendants dispute none of Defendant/Counter-Plaintiff's evidence.

The evidence Defendant/Counter-Plaintiff put forth, which remains undisputed, establishes the three elements of breach of contract. First, the undisputed evidence shows the Agreement is valid and enforceable. *See Coria*, No. 1:22-CV-199, 2024 WL 2703131, at *3. Plaintiffs admit the Agreement is valid and enforceable and that Plaintiff Anne Bever signed it. (Docs. 41 at 19; 82, ¶ 44.)

Second, the undisputed evidence shows Plaintiffs/Counter-Defendants breached the Agreement by filing an unjust enrichment claim in its original complaint. *See Coria*, No. 1:22-CV-199, 2024 WL 2703131, at *3. The Agreement includes the covenant not to sue Defendant for any claims "arising out of the use, reproduction, distribution, broadcast, performance or display of [Ms.] Bever's name, voice, biography, and/or visual likeness (collectively, the "Personal Attributes") as part of any Company Broadcast that [Ms.] Bever appears on or has appeared on." (Doc. 79-5, ¶ 5.) This Court already determined that the unjust enrichment claim was a claim against Defendant for the use of Anne Bever's Personal Attributes because the alleged use "necessarily involved her name, her voice, her biography, or her visual likeness." (Doc. 69 at 6–8). Accordingly, by making a claim of unjust enrichment in the original complaint, Plaintiffs/Counter-Defendants breached the covenant not to sue Defendant for any claim arising out of Anne Bever's Personal Attributes.

Third, the undisputed evidence shows Defendant/Counter-Plaintiff incurred damages from the breach. *See Coria*, No. 1:22-CV-199, 2024 WL 2703131, at *3. Attorneys' fees and costs incurred in defending against a claim filed in breach of a covenant not to sue are measured as actual damages for such breach. *See Anchor Motor Freight, Inc. v. Int'l Bhd. Of Teamsters, etc., Local Union No.* 377, 700 F.2d 1067, 1072 (6th Cir. 1983). According to the undisputed declaration of John T. Winemiller, an attorney for Defendant/Counter-Plaintiff, Defendant/Counter-Plaintiff suffered damages amounting to $88,143.40 from the fees and costs incurred defending the unjust enrichment claim resulting from the breach of the Agreement. (Doc. 88-1 at 4.)

Given the evidence supporting it and Plaintiffs/Counter-Defendants lack of opposition, a fair-minded jury could not return a verdict in favor of Plaintiffs/Counter-Defendants because there is no genuine issue of material fact and Defendant/Counter Plaintiff is entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 248–49. Therefore, the Court will **GRANT** Defendant/Counter-Plaintiff's motion for summary judgment as to the breach-of-contract counterclaim. (Doc. 84.) Because Plaintiffs/Counter-Defendants executed and breached their covenant not to sue, the Court finds that Defendant/Counter Plaintiff is entitled to judgment on the fees and costs incurred in defending against the unjust enrichment claim. *See Astor v. Int'l Bus. Machines Corp.*, 7 F.3d 533, 540 (6th Cir. 1993).

## IV. CONCLUSION

Plaintiffs' motion to set aside Defendant's pending motions pursuant to Rule 60(b)(1) of the Rules of Civil Procedure and reopen discovery (Doc. 97) will be **DENIED**. The Court will **GRANT** Defendant's motion for summary judgment as to Plaintiffs' claim for unfair competition. (Doc. 84.) As Plaintiff has no claims remaining, the Court will **DISMISS**

Plaintiffs' action **WITH PREJUDICE**. The Court will also **GRANT** Defendant/Counter-Plaintiff's motion for summary judgment as to its counterclaim for breach of contract in the amount of $88,143.40. (Doc. 84.) The motion to strike Plaintiffs' expert disclosure and exclude testimony (Doc. 89) will be **DENIED AS MOOT**.

       **AN APPROPRIATE ORDER WILL ENTER.**

/s/  
**CURTIS L. COLLIER**  
**UNITED STATES DISTRICT JUDGE**